United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

LISA M. M.,[1]

Plaintiff,

v.

SSA COMMISSIONER,

Defendant.

Case No. 26-cv-01533-RMI

**ORDER RESOLVING SOCIAL SECURITY APPEAL**

Re: Dkt. Nos. 13, 14

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that she was not disabled under Title II of the Social Security Act. *See* Admin. Rec. ("AR") 12.[2] The Social Security Administration's Appeals Council declined to review the ALJ's decision. *Id.* 1. As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security and reviewable by this court. 42 U.S.C. § 405(g). Both parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 8, 9. And both have filed briefs. Dkt. Nos. 13, 14, & 15.

For the reasons stated below, the decision of the ALJ is **AFFIRMED**.

## I. FACTS & BACKGROUND

Plaintiff applied for Title II disability insurance benefits on March 8, 2023, with an onset date of December 17, 2021. AR 17. She alleges physical disability due to hip, pelvis, back, and leg

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record, which is independently paginated, has been filed in twelve attachments to Docket Entry #12. *See* Dkts. 12-1 through 12-12.

United States District Court
Northern District of California

pain; and obesity. Her application was denied at the initial level in June 2023 and on reconsideration in May 2024. AR 17. A hearing before the ALJ was held on January 29, 2025. AR 17.

At the hearing, Plaintiff appeared along with counsel and testified how the pain in her back and lower body impacts her daily life. AR 38. She frequently rotates between sitting, standing, walking, and laying down to ease the "constant" pain. AR 48; *see also* AR 54 ("The pain is constantly there. There's nothing that triggers it. The pain is constantly there."). For example, she drives short distances as needed for shopping and doctor's appointments, but she cannot sit in the car for too long. AR 45. At the grocery store, too, she avoids lifting bags, and she cannot walk in the store for longer than twenty to thirty minutes. AR 49–50. While watching TV at home, she sits for thirty or forty minutes before needing to stand or walk in place. AR 50. She also takes care of her adult daughter, who has cerebral palsy, and despite being relatively independent, still requires assistance with bathing and preparing meals. AR 45–46, 50–52. Similarly, while preparing meals, she rotates between standing and sitting in the kitchen to try to alleviate her pain. AR 51–52. She previously worked as an office administrator, which involved occasionally lifting thirty-five-pound file boxes. AR 46–47. However, she experienced "constant" pain, and she only found relief by switching from sitting, standing, and walking. AR 48. On some occasions, she could not go to work because of back pain. AR 48. Plaintiff had tried medications, but at the time of the hearing, was only taking Tylenol or ibuprofen 800 and preferred to not use her prescription for Norco. AR 52. She tried a steroid injection, but her back pain worsened shortly afterwards. AR 53–54.

A vocational expert ("VE") also testified. AR 54. Based on the ALJ's hypotheticals, the VE testified that Plaintiff could perform her previous accounting clerk position and other roles at the light work level, such as production assembler, router, and price marker. AR 56–57.

The ALJ issued her decision on March 6, 2025, which determined that Plaintiff was not disabled under the Social Security Act. AR 14. The ALJ performed the required five-step analysis. *See* 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 17, 2021, the alleged onset date. AR 20.

At step two, the ALJ determines whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the hip and knee with trochanteric bursitis of the hip, and obesity. AR 20.

At step three, the ALJ determines whether the severity of claimant's impairment or combination of impairments meets or medically equals the criteria of any listed impairments. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Here, the ALJ determined that Plaintiff's impairments do not meet or medically equal a listed impairment. AR 20.

At step four, the ALJ determines the claimant's residual functional capacity ("RFC") to still perform past relevant work. The RFC describes what the claimant can still do despite her physical, mental, and other limitations. *See* 20 C.F.R. § 404.1520(e)–(f). Here, the ALJ determined that Plaintiff had the RFC to perform light work. AR 21. The ALJ found that Plaintiff (1) can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; (2) can never climb ladders, ropes, or scaffolds and should not be required to balance; and (3) should not work in extreme cold, at unprotected heights, or have the operational control of moving, dangerous machinery. AR 21–22. Based on the VE testimony, the ALJ found that Plaintiff could perform past relevant work as an accounting clerk because that job "does not require the performance of work-related activities precluded by the claimant's [RFC]." AR 28.

At step five, the ALJ determines whether the claimant can engage in other types of substantial gainful work that exists in the national economy based on the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(g). Here, based on the VE testimony, the ALJ made "alternate findings" that Plaintiff could perform light work jobs such as production assembler, router, and price marker. AR 29–30. As such, the ALJ found Plaintiff to not be disabled.

Plaintiff appeals.

## II. LEGAL STANDARD

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if

supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## III. DISCUSSION

### A. Plaintiff's Subjective Pain Testimony

Plaintiff's seeks reversal of the ALJ's decision based on her discrediting of Plaintiff's subjective pain testimony. The ALJ discredited her testimony when formulating the RFC because of (1) the medical evidence, (2) daily activities evidence, and (3) Plaintiff's treatment history. Pl.'s Br. 5–11.

"[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

United States District Court
Northern District of California

> symptoms alleged. . . . Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citation modified). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). In evaluating a plaintiff's credibility, the ALJ may consider, among other things, medical evidence of impairments and symptoms; inconsistencies in the testimony or between the testimony and conduct; daily activities; work record; and inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

**1. Medical Evidence**

The ALJ provided sufficiently specific reasons, supported by medical evidence, to discredit Plaintiff's testimony concerning the severity of her symptoms.

First, the ALJ wrote, "*Regarding the claimant's back pain*, imaging helped explain some of her complaints." AR 23 (emphasis added). Then, the ALJ analyzed Plaintiff's X-rays and MRIs of the lumbar spine, concluding that, "[w]hile radiology studies noted some findings, overall, imaging failed to establish limitations beyond those assessed in the above [RFC]." AR 23.[3] The following five paragraphs include additional medical evidence, including from physical examinations and an internal medicine consultative examination, that the ALJ found inconsistent with Plaintiff's testimony that her back pain was constant and debilitating. AR 23–24. Regarding Plaintiff's back pain testimony, the ALJ concluded that "the claimant's lumbar spine impairment results in some degree of functional limitation, but not to the extent alleged." AR 24. Second, the ALJ evaluated Plaintiff's testimony concerning pain in her "lower extremities." AR 24. The ALJ then discussed X-rays and MRIs of Plaintiff's right hip; physical examination findings of her hips and knees; and an internal medicine consultative examination for her hips, knees, and ankles. AR 24–25. Regarding

---

[3] Plaintiff argues that the ALJ erred by relying on X-rays because X-rays "document osseous abnormalities, while MRI studies reveal soft tissue and nerve abnormalities[, and] Plaintiff did not suffer from broken bones, but rather spinal nerve impingement." Pl.s' Reply 2. However, the ALJ discussed Plaintiff's MRIs and factored the MRI findings into the RFC. AR 23–24.

pain in the lower extremities, the ALJ concluded that "the evidence fails to establish that the claimant is more limited than the above [RFC] details." AR 25. And in a summary paragraph, the ALJ reiterated how she found the record to be inconsistent with Plaintiff's testimony. AR 25.

The ALJ devoted numerous paragraphs to providing specific medical evidence linked to specific portions of Plaintiff's testimony. AR 22–26. Even though the ALJ's analysis did not contain pinpoint citations to the hearing testimony, it did provide "record citations that discredit the symptom[s] at issue" by organizing and evaluating the medical evidence based on the location of the pain, *i.e.,* Plaintiff's back and lower body pain. *Ortiz v. Bisignano*, 179 F.4th 691, 706 (9th Cir. 2026). And by clearly identifying which medical evidence "connected" to Plaintiff's testimony concerning the pain in her back and lower extremities, the ALJ properly discounted her allegations of the pain's severity. *See Brown-Hunter*, 806 F.3d at 494 (finding that the ALJ erred by making "only a general credibility finding *without providing any reviewable reasons* why she found Brown–Hunter's testimony to be not credible") (emphasis added).

Relying on *Ortiz*, Plaintiff argues that the ALJ's reliance on certain normal physical examination findings cannot form a basis to discredit Plaintiff's pain testimony. Pl.'s Reply 2–3. However, the *Ortiz* court stated, "Normal results of strength, gait, and range of motion tests, *without more*, do not contradict diagnoses based on pain where the results do not indicate whether the test accounted for the relevant pain." 179 F.4th at 699 (emphasis added). The ALJ's analysis discussed many additional details from the same physical exams that included findings of normal gait, strength, and range of motion, such that those findings allow the ALJ to assess Plaintiff's pain testimony and craft the RFC. For instance, in evaluating Plaintiff's back pain allegations, the ALJ referred to a physical examination in August 2022 at which Plaintiff had "a normal gait and station as well as stable balance." AR 23. However, Plaintiff also demonstrated "right lower lumbar paraspinal tenderness and exquisite right [Sacroiliac] joint tenderness . . . [; and] forward flexion increased pain, extension increased pain, and lumbar facet loading was positive on the right." AR 23. As another example, the ALJ also mentioned a May 2023 exam where Plaintiff was "able to stand and walk without difficulties." AR 23. Also, however, Plaintiff "exhibited pain down the right

upper calf with the right slump test, but this was not present on the left." AR 23.[4] The ALJ reasonably relied on the physical examinations because they account for Plaintiff's pain.

In sum, the ALJ provided numerous medical evidence examples, linked to Plaintiff's testimony on her back and lower body pain, to discount the persuasiveness of her testimony.

**2. Daily Activities**

The ALJ's use of daily activities evidence to discredit Plaintiff's testimony was not based on clear and convincing reasons.

While an ALJ may discredit a plaintiff's testimony as to the alleged severity of the pain based on inconsistencies with daily activities, here, the ALJ failed to explain how Plaintiff's testimony about her daily activities was inconsistent with the claimed severity of her pain. The ALJ relied on Plaintiff's testimony that she cares for her daughter with special needs and occasionally drives to discredit Plaintiff's claimed pain severity. AR 26. But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Indeed, Plaintiff also testified that she takes frequent breaks during shopping outings, that she avoids driving for too long because of pain from sitting down, and that her daughter is somewhat independent. This testimony tends to support Plaintiff's claimed pain severity. The ALJ does not explain how Plaintiff's testimony of her daily activities is inconsistent with her alleged "constant" pain or how the daily activities are transferable to a work setting. Simply put, the ALJ's explanation of the daily activities does not meet the "clear and convincing" standard. *Lingenfelter*, 504 F.3d at 1035–36.

**3. Treatment**

To the extent that the ALJ discredited Plaintiff's testimony based on her medication and treatment history, the ALJ did not provide clear and convincing reasons for doing so.

---

[4] These examples also undercut Plaintiff's claim that the ALJ "cherry-picked" the record, Pl.s' Reply 4, because they show that the ALJ cited ample evidence that both supports and undercuts her conclusions.

Only two sentences of the ALJ's evaluation of Plaintiff's testimony concern her treatment: "As stated, most of her medication treatment was short lived or OTC, though she did have an SI joint injection. She stated that she had Norco, but only used about a bottle a year and did not report related side effects." AR 25. While the ALJ may consider "inadequately explained failure to seek treatment or to follow a prescribed course of treatment" as a reason to discredit subjective testimony, *Smolen*, 80 F.3d at 1284, the two-sentence analysis does not clearly assess how the treatment conflicts with Plaintiff's alleged pain severity. *See, e.g.,* AR 53 (Plaintiff testified that her pain worsened shortly after receiving the steroid injection.).

**B. Remedy**

Having identified legal errors in the ALJ's decision, the court must now determine the appropriate remedy. Plaintiff requests a remand for further proceedings. The Commissioner argues that any errors were harmless.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). But the ALJ's decision will not be reversed for harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "[A]n ALJ's error [is] harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by statute*, 20 C.F.R § 404.1502(a); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (concluding that the ALJ properly discredited the plaintiff's pain testimony with multiple, well-supported reasons, including based on the medical evidence, such that improper reliance on other factors was harmless error).

Here, the errors were harmless because the ALJ provided multiple reasons for discrediting Plaintiff's testimony, such that the in-depth evaluation of the medical evidence was sufficient and valid, even though the ALJ erred in evaluating Plaintiff's daily activities and medications. The depth of analysis concerning the daily activities and treatment pales in comparison to the ALJ's detailed evaluation of the medical evidence, which contains frequent and accurate record cites—indicating that the ALJ's errors were "inconsequential to the ultimate nondisability determination."

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation modified); *see also Murphy v. Colvin*, No. 14-CV-03784-YGR, 2015 WL 6674815, at *8 (N.D. Cal. Nov. 2, 2015) (finding that "the ALJ's determination that plaintiff lacked credibility was sufficiently supported by the clear and convincing reasons . . . drawn from the record, which [the ALJ] frequently and accurately cited," and that an invalid reason was harmless error "in light of the other clear and convincing reasons provided"); *Melissa G. v. Kijakazi*, No. 21-CV-05803-SK, 2022 WL 4596623, at *7 (N.D. Cal. July 13, 2022) (holding that "the ALJ properly excluded [p]laintiff's [pain] testimony" because "the conspicuous inconsistencies between objective medical records and [the p]laintiff's testimony provide a clear and convincing reason to question [p]laintiff's credibility," even though the ALJ did not provide clear and convincing reasons to reject the testimony based on "daily activities" and "treatment inadequacy"); *Murillo v. Colvin*, No. 15-CV-01325-JSC, 2016 WL 777793, at *22 (N.D. Cal. Feb. 29, 2016) (finding that "the ALJ sufficiently justified discounting [the p]laintiff's pain testimony," because even though "the ALJ provided some invalid reasons for discrediting the [p]laintiff's testimony—namely, the inadequately explained inconsistency with activities of daily living—she also provided valid reasons supported by the record for doing so"). Therefore, the ALJ's errors were harmless, and the appropriate outcome is to affirm.

## IV. CONCLUSION

For the reasons stated above, the decision of the ALJ is **AFFIRMED**. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: October 29, 2026

ROBERT M. ILLMAN
United States Magistrate Judge